## ST. LOUIS COMMISSION CO. v. SLOTNICK. (No. 7068.) *

(Court of Civil Appeals of Texas. San Antonio. Jan. 16, 1924. Rehearing Denied Feb. 13, 1924.)

1. **Factors ⚖☞23—Broker held bound to hold wool consigned to him until price agreeable to seller.**

Where seller arranged to secure an advance on a quantity of wool which he had consigned to a broker, and wrote that the same was to be held until the price was agreeable to him, and with this letter before it the broker accepted seller's draft, a binding contract was created between the parties which bound the broker to hold the wool until the price was agreeable to the seller.

2. **Customs and usages ⚖☞13 — Contract not varied by custom where not mentioned therein.**

Where the terms of a contract for the sale of wool did not mention a custom of brokers, nor was it made in contemplation of any custom, it could not be varied, impaired, or destroyed by such custom.

3. **Factors ⚖☞22—Seller justified in insisting on further holding of wool consigned to broker.**

Where broker was bound under a contract to hold a consignment of wool which had been placed in his hands for sale until the price was agreeable to seller, it was not unreasonable for seller to insist on a further holding of the wool at the time that broker informed him that the same would be sold, when condition justified a belief that a rise in value of wool products might reasonably be anticipated.

Appeal from District Court, Victoria County; John M. Green, Judge.

Action by the St. Louis Commission Company against Ed Slotnick. From an adverse judgment, plaintiff appeals. Affirmed.

C. C. Carsner, of Victoria, for appellant.
R. L. Daniel, of Victoria, for appellee.

FLY, C. J. This is a suit instituted by appellant against appellee for $1,623.85, alleged to be due on account of a wool and mohair transaction between the parties. Appellee pleaded a cross-action for $564.87. The cause was heard by the court, without a jury, and judgment was rendered that neither of the parties take anything by their actions, and that appellant pay all costs of suit.

[1, 2] In 1920 appellee owned in Inez, Texas, 11,145 pounds of wool and 520 pounds of mohair. The market for those commodities was demoralized, and there was but slight demand for them. On April 13, 1920, appellee sent a message by telegraph to appellant asking if it would make an advance of 30 cents a pound on the wool and mohair. The reply was wired that appellant would advance 20 cents a pound. On the same day appellant wrote a letter to appellee, which was received by him, in which the offer to make an advance of 20 cents a pound on the commodities, "With the understanding that you ship us your wool and it will not be sold until price is approved by you," was made. It was repeated in the letter: "Of course, we would not sell the wool until the price is agreeable to you." Acting on the offer appellee began at once to pack the wool and mohair, and ordered a car for shipping it. The car was fully loaded on April 20, 1920, and appellee wrote appellant that he had done, and that the shipment contained 87 sacks of wool, weighing 11,145 pounds, and 6 sacks of mohair, weighing 520 pounds, and drew on appellant for $2,333. He stated in the letter:

"As agreeable to yours of April 13th, your letter and wire with understanding you will hold this wool for me till price is agreeable with me to sell. It is fully understood you shall charge me at 6 per cent. for the $2,333 and wait till price is agreeable with me to sell."

The letter was received by appellant, without objection, and the draft drawn by appellee was paid. Afterwards appellee agreed to pay the insurance. Appellee was worth at least $25,000. The market for wool and mohair kept declining until September 19, 1921, when appellant wrote appellee that he must pay what he owed or the commodities would be sold and the proceeds applied on the debt. On September 27, 1921, appellant sold the wool and mohair at 12 cents a pound, the market value at that time, and credited the proceeds, $1,310.78, less freight, drayage, com-

mission, interest, and insurance, on the indebtedness. The amount credited on the $2,333 was $709.15, which left the sum of $1,623.85, for which appellant brought this action. Appellee did not consent to the sale of the wool and mohair, and the price obtained was not satisfactory to him. Wool and mohair began to increase in value directly after appellee's property had been sold, and steadily advanced in value until in June, 1922, wool and mohair of the same grade as that owned by appellee sold for 35½ cents a pound, and in July to 37 cents.

Whatever may have been written by appellee on April 16, 1920, as to what he expected to get for his property, and which was replied to by appellant on April 21, appellee wrote, as hereinbefore stated, on April 20, that the wool and mohair must be held until the price was agreeable to him, and, with that letter before it, on April 24, appellant accepted the draft and ratified its original contract. This was a binding contract between the parties and it bound appellant to hold the wool and mohair until the price was agreeable to appellee. The terms of that contract could not be varied, impaired, or destroyed by any custom among brokers in St. Louis. The contract mentioned no custom or rule of St. Louis brokers, and was not made with any such custom or rule in contemplation.

[3] Under the terms of the contract, and in view of all the circumstances, it was not unreasonable for appellee to insist on a further holding of the wool and mohair. It is rather suggestive that appellant should have been so eager to sell on the lowest market, only three or four days before the tide turned and the price of wool and mohair began to increase. It is significant that three or four months before the wool was sold a tariff bill had been adopted by the political party in control of the federal government which placed a duty ranging from 15 cents a pound to 45 cents a pound on wool and mohair, which was designed to increase the price of wool and mohair, and which could be calculated on as having that effect. The desire to favor certain industries by increasing the value of their different commodities, such as sugar, wool, and mohair, was so intense that time for the regular tariff bill to be drawn and passed could not be awaited, and on May 24, 1921, little more than two months after the change of administration took place, what is known as the "emergency tariff" was passed by Congress. Wool and mohair, as well as sugar, were named in that bill. In the very nature of things a rise in the value of tariff protected commodities was to be anticipated, and it was reasonable for appellee to desire to hold his property until the turn in prices came, and there might possibly be an incentive to obtain appellee's property in anticipation of such rise. The

account of sale does not indicate to whom the wool and mohair were sold.

The judgment is affirmed.